IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DENNIS WAYNE SPINDLE,

     Petitioner,

v.                          Civil Action No. 3:15CV133

HAROLD CLARKE,

     Respondent.

## REPORT AND RECOMMENDATION

Dennis Wayne Spindle, a Virginia state prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 (hereinafter, "§ 2254 Petition," ECF No. 1). The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that the § 2254 Petition be DENIED.

A.   **Spindle's Claims**

Spindle was convicted in the Circuit Court of the City of Fredericksburg ("Circuit Court") of malicious wounding, use of a firearm in the commission of a felony, and possession of a firearm by a convicted felon. (ECF No. 14-1, at 24.) In his § 2254 Petition, Spindle demands relief upon the following grounds:

> Claim One:    Ineffective assistance of counsel in violation of the U.S. and Virginia Constitution Sixth and Fourteenth Amendments by virtue of counsel's failure to:

a. File a motion to sever the indictment regarding the count of possessing a gun by a convicted felon; investigate the case; follow up on previous attorney's discovery motion; provide adequate representation, by interviewing witnesses, properly calling witnesses to the stand to testify, properly examining and cross-examining witnesses, and exercising sound trial strategy;

b. Subpoena Kennard Johnson to the motion hearing to set aside judgment whose testimony could have changed the verdict;

c. Properly provide a sound legal argument at the motion to set aside judgment hearing to support the Brady[1] claim;

d. Properly perfect his client's appeal in which counsel did not raise appellate issues regarding his overruled objections by the court prohibiting evidence of bad acts by Mr. Shelton to be heard by the jury; the Commonwealth's proffer of immunity in open court to a witness (who had asserted her 5th Amendment right to remain silent) to testify against Mr. Spindle; the evidence was insufficient to convict; and, properly follow the appellate rules to perfect the appeal and for timely procedures such as a request for a three-judge panel. (Br. Supp. § 2254 Pet. 6, ECF No. 2).[2]

Claim Two:      Prosecutorial misconduct in violation of the U.S. and Virginia Constitution Fifth and Fourteenth Amendments for failing to disclose [Brady] impeachment evidence as well as exculpatory

---

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] The Court employs the pagination assigned to the Memorandum in Support of the § 2254 Petition by the CM/ECF docketing system. The Court corrects the spelling and capitalization in the quotations from Spindle's submissions.

evidence favorable to the defendant which is applicable even though there was no specific request by the defendant. (Id. (alteration in original).)

Claim Three: Insufficient evidence to convict in violation of the U.S. and Virginia Constitution Fourteenth Amendment. (Id.)

Respondent has moved to dismiss, arguing that the second portion of Claim Two (prosecutorial misconduct occurred when the prosecution failed to disclose exculpatory evidence) and all of Claim Three are procedurally defaulted, and that Claim One and the first portion of Claim Two lack merit. Despite receiving an extension of time, Spindle has not responded. As explained below, it is RECOMMENDED that Claim Three BE DISMISSED as procedurally defaulted, and Claims One and Two BE DISMISSED as lacking in merit.[3]

## B.   Applicable Constraints upon Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed

---

[3] Although Respondent's procedural default argument with respect to Claim Two is viable, the Court chooses to dismiss all of Claim Two for lack of merit.

to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## C.   Procedurally Defaulted Claim

In Claim Three, Spindle contends that insufficient evidence existed to convict him of malicious wounding. (Br. Supp. § 2254 Pet. at 22-26.)   Respondent asserts that this claim is procedurally defaulted. (Mem. Supp. Mot. Dismiss 6-7.)

State exhaustion "'is rooted in considerations of federal-state comity,'" and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate

state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court

with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now

find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1).[4]   The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

On direct appeal, Spindle argued that "the trial court erred in denying his motion to strike the evidence because the evidence was insufficient to sustain a conviction of aggravated malicious wounding under Code § 18.2-51.2." (ECF No. 14-1, at 30 (emphasis added).) The Court of Appeals of Virginia found that Spindle's argument was moot because the jury had acquitted him of aggravated malicious wounding and instead "found him guilty of the lesser offense of malicious wounding." Id.

In state habeas proceedings, however, Spindle raised a sufficiency of the evidence claim different than the claim raised on direct appeal. Spindle's claim in the habeas proceedings was that the evidence presented at trial was insufficient to sustain a conviction for malicious wounding

---

[4] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

because Spindle acted in self-defense and did not act with malice. (ECF No. 14-8, at 30-31.) The Supreme Court of Virginia affirmed the dismissal of Claim Three pursuant to Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), because Spindle could have but failed to raise this claim at trial and on direct appeal. (ECF No. 14-10, at 1; see also ECF No. 14-9, at 4-6.)

In his § 2254 Petition, Spindle now raises, as Claim Three, the sufficiency of the evidence claim that he raised in state habeas proceedings. However, the United States Court of Appeals for the Fourth Circuit routinely finds that Slayton constitutes an independent and adequate state procedural rule. Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000); Wright v. Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998). Accordingly, Claim Three is procedurally defaulted. See Gray v. Netherland, 99 F.3d 158, 162-64 (4th Cir. 1996) (finding claim based on a different legal theory defaulted).

Because Claim Three is procedurally defaulted, the Court cannot review the merits of this claim without a showing of cause and prejudice or actual innocence. Harris, 489 U.S. at 262. To the extent Spindle asserts that the ineffective assistance of appellate counsel excuses his default, that assertion lacks merit for the reasons set forth in conjunction with the dismissal of Claim 1(d). See infra Part E.4.

Accordingly, it is RECOMMENDED that the Court DISMISS Claim Three as procedurally defaulted.

## D.   Prosecutorial Misconduct

In Claim Two, Spindle first contends that the Commonwealth's Attorney failed to disclose "information, exculpatory in nature, which would have shown Shelton as the aggressor," in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). (Br. Supp. § 2254 Pet. 21.) The Circuit Court provided the following summary of the evidence introduced at trial:

> Viewing the evidence in the light most favorable to the Commonwealth, as the Court of Appeals must do on appeal, see Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), the petitioner went to Shelton's home, carrying a gun he had purchased that day, after the men argued over a $50 debt. The petitioner then shot Shelton while the petitioner was sitting in his car and Shelton stood unarmed, 20 to 30 feet away from him. Although the petitioner testified that he shot the gun in self-defense, the jury was "entitled to disbelieve the self-serving testimony" of the petitioner and, furthermore, to infer that the petitioner was "lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).
>
> . . . .
>
> Further circumstances support the trial court's finding that the petitioner maliciously shot the victim. The petitioner purchased a gun that day after arguing with Shelton and took the gun to Shelton's home, where he knocked on Shelton's window with the gun. Additionally, after Shultz refused to roll down her window, the petitioner turned the car, such that he could shoot the petitioner through the open driver's side window. Plus, the petitioner chose to shoot Shelton, rather than driving away when Shelton was over 20 feet away from him. Finally, the petitioner sped away from the scene and then instructed Shultz to lie and state that she had shot the victim. The petitioner's dishonesty was further

"affirmative evidence of guilt. Haskins v. Commonwealth, 44 Va. App. 1, 11 n.3, 602 S.E.2d 402, 407 n.3 (2004). Thus, the evidence of the petitioner's "conduct and his statements" during the altercation and after the shooting support the trial court's finding that appellant acted with the specific intent to maim, disfigure, disable, or kill the victim.

(ECF No. 14-9, at 19-21 (final citation omitted).)

In support of his claim, Spindle refers to an affidavit written by Kennard Johnson, a witness to the incident. Johnson's affidavit, which Spindle included as an exhibit to his state habeas petition, states:

> I make the following affidavit under penalty of perjury in the matter of Commonwealth of Virginia v. Dennis Spindle.
> I was a witness to the shooting in the street at the bottom of Martin Shelton's driveway on Village Lane. On that evening I saw a red car backing rapidly down Shelton's driveway, with Shelton pursuing the car to the street. At that time, as Shelton approached the driver's door, one shot was fired, and Shelton went down.
> After Shelton was taken in the ambulance, I saw several police officers up at the front of Shelton's house, obviously, searching for something. When I approached them and inquired about what they were doing I was told by an Officer, whose name I do not recall, that they were looking for Shelton's blood because he indicated that he had been shot as he left his house. I advised the police that in fact Shelton had been shot after pursuing a car to the bottom of his driveway.
> I had been subpoenaed previously, but was called and told that I did not need to be in Court on the date that Spindle was tried.

(ECF No. 14-8, at 38.)

Brady and its progeny "require[] a court to vacate a conviction and order a new trial if it finds that the

10

prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011). Accordingly, in order to obtain relief under Brady, a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." Id. (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)).

Spindle fails to demonstrate that the Commonwealth's Attorney suppressed material evidence. Although Johnson's affidavit states that Shelton pursued Spindle's car down the driveway, nothing in the affidavit indicates that Shelton did so in an aggressive manner that would cause Spindle to act in self-defense.[5] Furthermore, the information regarding the location of

---

[5] At trial, Shelton testified when Spindle arrived at Shelton's house, Spindle began banging on the front window with a pistol, breaking the screen. (May 10, 2012 Tr. 107-09, ECF No. 14-2.) Spindle also took a stick and knocked down an aluminum awning that had been hanging over Shelton's porch. (May 10, 2012 Tr. 109-10.) Shelton came outside, and Spindle began walking back towards his vehicle. (May 10, 2012 Tr. 110-11.) Shelton picked up the stick and began to follow Spindle down the driveway. (May 10, 2012 Tr. 113-14.) By that time, Spindle had gotten back into his vehicle and had started to reverse into the street. (May 10, 2012 Tr. 114-15.) Shelton threw the stick back up the driveway. (May 10, 2012 Tr. 116.) Moreover, Rasmiah Shultz, the passenger in Spindle's vehicle on that day, testified that she observed Spindle tapping on the window with a gun. (May 10, 2012 Tr. 240, ECF No. 14-5.) Shultz also observed Shelton running down the driveway toward the vehicle with the stick in hand. (May 10, 2012 Tr. 244-45.) When Shelton reached the end of the driveway, the passenger side of the vehicle was facing him. (May 10, 2012 Tr. 246-47.) However, right before shooting Shelton, Spindle "whipped the car

the police investigation was cumulative to other evidence presented at trial. (See May 10, 2012 Tr. 161-63, 173-74, ECF No. 14-3.) Thus, Johnson's testimony was not exculpatory, and no Brady violation occurred.

In a separate portion of Claim Two, Spindle contends that the prosecution violated Brady with respect to Shelton's testimony at the preliminary hearing. As explained below, this claim is frivolous. Spindle alleges that the Commonwealth's Attorney failed to disclose that "Shelton adamantly testified at the preliminary hearing on cross examination . . . that he did not possess the stick; rather it was Spindle who had such. Shelton further testified at trial that he did indeed possess the stick." (Br. Supp. § 2254 Pet. 21.) During Spindle's trial, Shelton testified that when Spindle came to Shelton's house, Spindle started banging on the aluminum awning over Shelton's front porch. (May 10, 2012 Tr. 109, ECF No. 14-2.) Shelton came out of his house and picked up a stick that was lying next to the steps. (May 10, 2012 Tr. 111-13.) Shelton walked toward Spindle while holding the stick in his hand. (May 10, 2012 Tr. 114.) He subsequently "threw the stick up the driveway." (May 10, 2012 Tr. 115.)

In rejecting this claim, the Circuit Court noted that "the petitioner knew of Shelton's allegedly inconsistent testimony around the other way" so that the driver's side was facing Shelton. (May 10, 2012 Tr. 248.)

because it was given in open court. Accordingly, no <u>Brady</u> violation occurred." (ECF No. 14-9, at 6.) The Circuit Court's decision was not unreasonable. <u>See</u> <u>United States v. Roane</u>, 378 F.3d 382, 402 (4th Cir. 2004) (citation omitted) ("We have explained that information actually known by the defendant falls outside the ambit of the <u>Brady</u> rule.") Because no <u>Brady</u> violations occurred, it is RECOMMENDED that Claim Two be DISMISSED as meritless.

## E. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of <u>Strickland</u>, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" <u>Burch v. Corcoran</u>, 273 F.3d 577, 588 (4th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. In analyzing

ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### 1. Claim 1(a)

In Claim 1(a), Spindle alleges that trial counsel was ineffective in various ways. Spindle first contends that counsel failed to "file a motion to sever the indictment regarding the count of possessing a gun by a convicted felon." (Br. Supp. § 2254 Pet. 6.) Spindle claims that counsel's failure to do so "severely prejudiced [his] Sixth Amendment right to a fair trial by tainting the jurors' minds regarding [his] past rather than the facts at hand." (Id. at 10-11.) Essentially, Spindle claims that counsel should have filed the motion to sever so that the jury would not know he was a convicted felon.

The record contains an affidavit from Cary Bowen, Spindle's counsel. As to this claim, Bowen avers:

> Counsel for the defendant considered filing the Motion to Sever the Indictment for possession of a firearm by a convicted felon, and in fact discussed that with the defendant. The defendant made it clear all along that he intended to testify on his own behalf at trial, and that issue was discussed with counsel. Counsel advised Spindle that juries had a way of seeing the truth, and if he wasn't going to speak the truth that it might be best to consider not testifying. Spindle advised that he had to testify to explain what really happened because the female passenger in his car, Shultz, would not be as good a witness as he was.

14

> Spindle further advised that the pistol was not his anyway but that he snatched it from [] Shultz's purse when they were attacked by Shelton.
> Armed with that information, we agreed that there was little point in severing that particular charge, since as soon as Spindle testified the jury would hear about his prior felony convictions.

(ECF No. 14-7, at 45-48 ("Bowen Aff.").) During cross-examination, Spindle testified that he had been convicted of sixteen felonies. (May 10, 2012 Tr. 300, ECF No. 14-6.) Spindle has presented no evidence that he did not voluntarily acquiesce to this strategy. See Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) ("Without evidence that [the defendant] was subject to continued coercion, we cannot assume that [the defendant's] apparent acquiescence to a trial strategy . . . was anything but voluntary."). Given this, Spindle cannot demonstrate that counsel was deficient for failing to file a motion to sever the felon in possession charge. Moreover, since Spindle himself provided testimony about his previous felony convictions, he cannot show that counsel's failure to file the motion prejudiced his defense in any way.

Next, Spindle suggests that counsel was ineffective for not "fil[ing] or follow[ing] up on any pretrial motions" and for not "ma[king] [any] effort to contact or interview all of the witnesses prior to trial." (Br. Supp. § 2254 Pet. 13.) However, such a conclusory allegation without any factual support fails to establish any deficiency of counsel or

resulting prejudice.  See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations").  Nevertheless, counsel has averred:

> Counsel interviewed and attempted to interview witnesses and follow-up on every lead that was presented to counsel by Spindle.  Several of those witnesses indicated quite clearly that they thought Spindle did not need to shoot Shelton, and that if they testified, their testimony would not help Spindle at all.  This information was relayed to Spindle after the various witness interviews.

(Bowen Aff. 2.)  Clearly, counsel cannot be faulted for choosing not to present adverse witness testimony.

Spindle next contends that counsel failed to properly investigate because he did not discover "Kennard Johnson who witnessed the actual incident and made a police statement favorable to Spindle's claim of self defense."  (Br. Supp. § 2254 Pet. 11 (footnote omitted).)  Counsel averred:

> Discovery of the witness Kennard Johnson[] was actually a factor of the Commonwealth's subpoena, just as Spindle relates in his petition.  Though counsel for Spindle knocked on doors in the neighborhood, at the Johnson household no witnesses were found.
> It was only later when the Commonwealth's subpoena and the release of the witness was discovered that counsel was able to find where Johnson worked, and it was there that he was interviewed.  After interviewing and meeting with Johnson on two occasions, counsel decided that the affidavit was not only sufficient, but that it might be in the best interest of Spindle[] not to have Johnson present . . . .

(Bowen Aff. at 2.)   Counsel acted reasonably to attempt to locate Johnson prior to Spindle's trial.   Nevertheless, as discussed supra in Part D, Johnson's affidavit was neither exculpatory nor favorable to Spindle's claim of self-defense.

Finally, Spindle suggests that counsel failed to investigate because he failed to retain a firearms forensics expert.  (Br. Supp. § 2254 Pet. 13.)  Spindle believes that the "evidence would have shown that the distance between Shelton and Spindle when the shot was fired was only two feet."  (Id.) However, Spindle has provided "no concrete evidence of what [a firearms forensic expert] would have testified to in exculpation."  United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004).  Accordingly, Spindle cannot sustain a claim that counsel was ineffective for failing to retain an expert.

In sum, the Circuit Court's rejection of these claims is reasonable under Strickland.  Accordingly, it is RECOMMENDED that Claim 1(a) be DISMISSED because Spindle fails to demonstrate deficiency or prejudice.

2.   Claim 1(b)

In Claim 1(b), Spindle alleges that counsel was ineffective for "fail[ing] to subpoena Kennard Johnson to the motion hearing to set aside judgment based on eyewitness exculpatory evidence which could have changed the jury's verdict."  (Br. Supp. § 2254

17

Pet. 13.)   In rejecting this claim for failing to demonstrate deficiency or prejudice, the Circuit Court stated:

> The petitioner fails to provide any evidence of what Johnson's testimony would have been at the motion to set aside the judgment and how his testimony at the hearing would have been any different from the affidavit which counsel presented in the trial court that the Court of Appeals has already found to be cumulative and not exculpatory.
>
> The petitioner's failure to proffer an affidavit as to what Johnson's testimony would have been had he been subpoenaed for the motion hearing is fatal to his claim.

(ECF No. 14-9, at 14.)   The Circuit Court's holding was a reasonable application of Strickland.   Where a petitioner fails to proffer precisely what testimony a missing witness would have provided and fails to supply an affidavit verifying that proffer, he does not meet his burden to demonstrate that counsel's performance was ineffective.   See Makdessi v. Watson, 682 F. Supp. 2d 633, 654 (E.D. Va. 2010).   Accordingly, it is RECOMMENDED that Claim 1(b) be DISMISSED because Spindle fails to demonstrate deficiency or prejudice.

### 3.   Claim 1(c)

In Claim 1(c), Spindle alleges that counsel "failed to properly provide a sound legal argument at the motion to set aside judgment hearing to support the Brady claim." (Br. Supp. § 2254 Pet. 13.)   According to Spindle, "[c]ounsel's ineffectiveness at the motion hearing was due to the fact that he did not subpoena Kennard Johnson to be present to testify to

the events he witnessed on the night that Shelton was shot."
(Id.)  He claims that Johnson's testimony would have mirrored
that presented by Spindle at trial.  (Id. at 15.)  In rejecting
this claim, the Circuit Court stated:

> To the extent the petitioner argues that trial
> counsel was ineffective in failing to make "sound
> legal argument" because "he did not subpoena Kenard
> Johnson to be present to testify to the events he
> witnessed on the night Shelton was shot," the claim
> fails for the reasons articulated in the respondent's
> discussion of claim (1)(b)-the petitioner has failed
> to show that Johnson would have testified any
> differently at the hearing than his statements in the
> affidavit and the proffered testimony in the affidavit
> was cumulative and not exculpatory.

(ECF No. 14-9, at 15.)  As discussed supra in Part D, the Court
has already determined that the proffered testimony contained in
Johnson's affidavit was cumulative and not exculpatory.  Thus,
the Circuit Court's holding was a reasonable application of
Strickland.  Accordingly, it is RECOMMENDED that Claim 1(c) be
DISMISSED because Spindle fails to demonstrate deficiency or
prejudice.

### 4.  Claim 1(d)

In Claim 1(d), Spindle raises four (4) claims concerning
appellate counsel's alleged ineffectiveness.  "In order to
establish a claim that appellate counsel was ineffective for
failing to pursue a claim on direct appeal, the applicant must
normally demonstrate" that appellate counsel performed
deficiently and that a reasonable probability of a different

result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Spindle first alleges that counsel was ineffective for failing to raise on appeal the Circuit Court's decision to "prohibit[] evidence of bad acts by Mr. Shelton to be heard by the jury." (Br. Supp. § 2254 Pet. 16.) Specifically, Spindle contends that counsel should have asserted that Rule 2:607 of the Virginia Rules of Evidence would have allowed counsel to impeach Shelton based upon evidence of prior bad acts. (Id. at 17.)

20

In rejecting this claim, the Circuit Court stated:

> Rule 2.607 did not come into effect until July 1, 2012, nearly two months after the petitioner's trial. Therefore, any challenge of the Court's exclusion of evidence based on Shelton's bad acts based on Rule 2:607 would have been unsuccessful. See Fails v. VA. State Bar, 265 Va. 3[,] 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).
>
> To the extent the petitioner is arguing that generally it was error not to admit evidence of Shelton's "bar fights,"[6] his claim fails. Preliminarily, the petitioner was able to testify that he had previously seen Shelton commit acts of violence and Shelton had admitted to the petitioner that he had committed acts of violence. Moreover, Shelton admitted himself that he had numerous drug-related felony convictions and at least three convictions for assault and battery. Shelton admitted that most of his assault and battery convictions were the result of altercations that began in "barrooms." Accordingly, even if the trial court erred in excluding the petitioner's testimony regarding Shelton's "bar fights," this error did not prejudice the petitioner because the evidence came in through other sources and was thus cumulative. King v. Cooley, 274 Va. 374, 380, 650 S.E.2d 523, 527 (2007) (holding that the exclusion of cumulative testimony could not have affected the jury's determination and therefore harmless error).

(ECF No. 14-9, at 17-18.)   The Circuit Court's conclusion is a reasonable application of Strickland, as Spindle has failed to demonstrate that this argument would have been stronger than

---

[6] The petitioner fails to provide any transcript citation to point to what specific ruling appellate counsel should have challenged on appeal. The Court assumes he is referring to the Commonwealth's challenge of evidence regarding the petitioner's knowledge that Shelton had participated in bar fights.

those counsel chose to present on appeal. See Bell, 236 F.3d at 164 (citation omitted).[7]

Spindle next asserts that counsel was ineffective for failing to challenge on appeal the Commonwealth's grant of immunity to Rasmiah K. Shultz to be a witness against Spindle. (Br. Supp. § 2254 Pet. 18.) Such a conclusory allegation without any factual support fails to establish any deficiency of counsel or resulting prejudice. See Sanders, 373 U.S. at 19. Spindle offers no argument in support of this contention, and he fails to suggest how appellate counsel could have successfully challenged the grant of immunity. Accordingly, Spindle's argument is without merit.

Third, Spindle contends that counsel should have challenged on appeal the sufficiency of the evidence. (Br. Supp. § 2254 Pet. 17.) According to Spindle, "counsel referred to Va. Code § 18.2-51.2 [aggravated malicious wounding] regarding the issues at hand during the appellate process in the Court of Appeals and the Supreme Court of Virginia. Counsel failed to realize that Spindle was convicted of Va. Code § 18.2-52 [malicious wounding]

---

[7] On appeal, counsel argued that "the trial court erred in denying his motion to set aside the verdict because the Commonwealth failed to disclose material exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963)." (ECF No. 14-1, at 28.) Counsel also argued that "the trial court erred in denying his motion to strike the evidence because the evidence was insufficient to sustain a conviction of aggravated malicious wounding under [Virginia] Code § 18.2-51.2." (Id. at 30.)

rendering his arguments moot." (Id. at 18 (alterations in original).)

As an initial matter, Spindle is correct that "the jury acquitted [him] of aggravated malicious wounding and found him guilty of the lesser offense of malicious wounding." (ECF No. 14-1, at 30.) To the extent that Spindle is claiming that counsel should have argued that the evidence was insufficient to convict him of malicious wounding, the summary of the evidence set forth supra in Part D establishes that the evidence was more than sufficient to convict Spindle of malicious wounding. Thus, Spindle cannot demonstrate prejudice. See Bell, 236 F.3d at 164 (citation omitted).

Finally, Spindle alleges that counsel failed to "properly follow the appellate rules to perfect the appeal and rules for timely procedures such as a request for a three judge panel." (Br. Supp. § 2254 Pet. 17.) The record reflects that Spindle's counsel on direct appeal did request oral argument before a three-judge panel of the Court of Appeals of Virginia. (ECF No. 14-8, at 39.) However, that request was denied as untimely filed. (Id.) Nevertheless, the Supreme Court of Virginia reviewed Spindle's claims and refused his petition for appeal. (ECF No. 14-1, at 31.) Accordingly, because the highest appellate court considered Spindle's claims, Spindle cannot demonstrate that he was prejudiced by counsel's failure to

timely request review by a three-judge panel of the Court of Appeals of Virginia. See Bah v. Johnson, No. CL07001014-00, 2008 WL 8225268, at *2 (Va. Cir. Ct. Oct. 31, 2008) (concluding under Strickland that, even if counsel's performance was deficient in failing to timely seek review by a three-judge panel, petitioner suffered no prejudice because "[t]he Supreme Court would have considered the same case in issuing its final judgment, regardless of which manifestation of the Court of Appeals considered it last and how it had ruled").

In sum, the Circuit Court's rejection of Spindle's claims concerning appellate counsel was reasonable under Strickland. Accordingly, it is RECOMMENDED that Claim 1(d) be DISMISSED because Spindle fails to demonstrate deficiency or prejudice.

F.   Conclusion

For the foregoing reasons, it is RECOMMENDED that the Court GRANT Respondent's Motion to Dismiss (ECF No. 12) and DISMISS Spindle's claims.   It is further RECOMMENDED that Spindle's § 2254 Petition be DENIED and the action be DISMISSED.

Spindle is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof.   Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. See Fed. R. Civ. P. 72(b).   Failure to timely file specific objections to

the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. See Carr v. Hutto, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of the Report and Recommendation to Spindle and counsel of record.

                                    /s/
                              Roderick C. Young
                              United States Magistrate Judge

Date: February 5, 2016
Richmond, Virginia